Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6536 | **DATE** | March 15, 2002 |
| **CASE TITLE** | Surico v. Illinois School District No. 88 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (doc. #9)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment (doc. #9) is **GRANTED**. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 19 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JULIE SURICO,
    Plaintiff,

v.

ILLINOIS SCHOOL DISTRICT NO. 88,
    Defendant.

CASE NO. 00 C 6536

JUDGE WILLIAM J. HIBBLER

DOCKETED
MAR 1 9 2002

## MEMORANDUM OPINION AND ORDER

Pending in this employment discrimination action is Defendant's motion for summary judgment. The Court has examined the submissions by the parties, and now determines summary judgment should be granted in favor of Defendant.

### I. Background

Plaintiff Julie Surico is a White female who is currently employed by Defendant Illinois School District No. 88 ("District") as a schoolteacher. In August 1999, during a School Board meeting Marilyn Thurman, President of the Board and chairperson of the Personnel Committee, recommended the Board establish the position of Special Projects Assistant ("SPA"). At the same meeting, Ms. Thurman suggested the Board offer the SPA position to Edward Brownlee, an African-American male who was not a District employee. The Board followed both of Ms. Thurman's recommendations. Upon learning of the Board's actions, the teacher's union filed a grievance alleging the Board violated the collective bargaining agreement by filling a position without first posting it for five days. In response, the Board rescinded the creation of the position and the hiring of Mr. Brownlee.

On September 16, 1999, the District posted the position of Special Projects Assistant. According to the job description, the qualifications sought included: (1) B.A. or B.S. in related field; (2) Applicable knowledge and background in finance, management, and marketing; (3) Minimum of three years



experience in either fund raising, educational training or community based social services agency group organizing. The primary goal of the job was identified as organizing and planning educational projects/programs that would extend learning opportunities for students in the District. Three applicants submitted resumes for the position, Ms. Surico, Mr. Brownlee, and Hilder Hogsett, an African-American female District employee, and each was subsequently interviewed by a team of school administrators appointed by Dr. Phylistine Murphy, the District Superintendent. Following those interviews, the committee ranked the applicants. Ms. Surico scored 188 points, Ms. Hogsett scored 164 points and Mr. Brownlee scored 160 points. Consequently, Dr. Murphy recommended Ms. Surico to the Board for the SPA position.

However, after considering Dr. Murphy's non-binding recommendation and reviewing the applicant's resumes, the Board decided Mr. Brownlee, not Ms. Surico, was the applicant best suited for the SPA position. Specifically, the Board noted Mr. Brownlee had a MBA from Dominican University, as well as prior experience in the areas of finance, management and marketing, while Ms. Surico held a Master's degree in Early Childhood Education from Concordia University along with several years of teaching experience. After comparing the resumes to the criteria listed in the job description, the Board concluded Mr. Brownlee with his more extensive financial background was a better match for the SPA position than Ms. Surico. Therefore the Board re-offered the position to Mr. Brownlee, who accepted the job and is currently employed by the District in that role.

After being denied the SPA position, Ms. Surico filed a charge with the EEOC, and then brought this lawsuit against the District claiming race and gender discrimination. The District moves for summary judgment, contending Ms. Surico cannot point to any evidence demonstrating the Board impermissibly relied on race or gender in selecting Mr. Brownlee for the SPA position. Ms. Surico maintains the record contains a wealth of circumstantial evidence that raises an issue of fact as to whether the District's reasons for not hiring her are pretextual, and therefore summary judgment must be denied.

## II. Standard for Summary Judgment

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts and inferences are viewed in the light most favorable to the non-moving party. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1988). Additionally, in employment discrimination cases, this standard is applied with added rigor because intent and credibility are crucial issues. *Id.* However, the use of self-serving assertions, without factual support in the record, will not defeat a motion for summary judgment. *Id.* Instead, the party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). Indeed, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there can be no genuine issue as to any material fact. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

Title VII of the Civil Rights Act, *42 U.S.C. § 2000e-2(a)*, provides:

> It shall be an unlawful employment practice for an employer – (1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...

A Title VII claim can be proven by either the direct or indirect method. Ms. Surico concedes she has no direct evidence of discriminatory intent by the Board. Therefore the Court will focus its analysis on the indirect method, which is more commonly referred to as the *McDonnell-Douglas* burden-shifting method. Three steps are involved. First the employee must establish a prima facie case by satisfying a four-prong test. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). Next the employee may rebut the prima facie case by articulating a legitimate, nondiscriminatory reason for its allegedly biased employment decision. *Id.* Finally the employee may then challenge the employer's stated reason on pretextual grounds.

*Id* at 747.

### A. Prima Facie Case

Ms. Surico must demonstrate that: (1) she belongs to some protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) the District treated similarly-situated employees outside her classification more favorably. *Id.* at 746. In establishing her prima facie case, Ms. Surico creates a legally mandatory, rebuttable presumption that the District unlawfully discriminated against her. *Baron v. City of Highland Park*, 195 F.3d 333, 339 (7th Cir. 1999).

Neither party disputes whether Ms. Surico satisfies the first, third and fourth prongs of the test. However, the District does contend Ms. Surico cannot prove the second prong because she lacked the requisite credentials for the SPA position, as set forth in the job description, and therefore was not a qualified candidate. The question to be asked, though, is "not whether [Ms. Surico] should have [been chosen for the position], but whether [s]he has presented sufficient evidence that [s]he was qualified for the position. In other words, even if [Ms. Surico] was not the most qualified candidate, was [s]he nevertheless a qualified candidate?" *Id.* at 340. That Ms. Surico received the highest rating from the interview committee and the recommendation of Dr. Murphy suggests she met the qualifications for the SPA position. Consequently, Ms. Surico has established a prima facie case.

### B. Legitimate, Non-Discriminatory Reason

The burden now shifts to the District to offer a legitimate, non-discriminatory reason for not hiring Ms. Surico for the SPA position. The District maintains the Board selected Mr. Brownlee rather than Ms. Surico based solely on its consideration of the job description and each applicant's resume materials. Ms. Thurman testified at her deposition that the Board was looking for someone with experience in finance, marketing and management to fill the SPA position, and Mr. Brownlee's background in these areas was more extensive than any other candidate. The job description outlines a position requiring an individual to possess not only the personal skills to act as a liaison between the District and the community, but also the business skills to organize and run special projects and school programs. Thus, the Court finds the Board's emphasis on hiring a candidate with a strong business background is certainly in line with the position description. Because Ms. Surico admittedly did not have the business experience possessed by

Mr. Brownlee, the Board has advanced a legitimate, non-discriminatory reason for its hiring decision.

## C. Pretext

Ms. Surico must now come forward with evidence showing her limited business experience was not the true reason the Board rejected her for the SPA position, but instead was a pretext for discrimination. "Pretext means a lie, specifically a phony reason for some action." *James*, 137 F.3d at 1007 (internal quotations omitted). To establish pretext, Ms. Surico must show "either that the [District] lied about why it opted not to [hire] [her] . . . or that the [District's] reasons have no basis in fact." *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001).

Ms. Surico offers several grounds to support her claim of pretext. First she emphasizes her qualifications for the SPA position, noting her higher interview rating, ties to the community and District, and the fact that several years earlier she had proposed to the Board the creation of a similar position. But to prove pretext, Ms. Surico must do more than demonstrate she was qualified for the position. *James*, 137 F.3d at 1007. Instead, "she must rebut the nondiscriminatory reason given for why she was not [offered the job]." *Id.* Arguments about her qualifications simply do not show the District's reasons for choosing Mr. Brownlee were untrue. Indeed, Mr. Brownlee also possessed the requisite skills sought by the Board and therefore he too was a qualified candidate. That the Board placed more weight upon the resume materials than the interview selection process may seem unfair, but "unfairness is not discrimination." *Id.* at 1008.

Along the same lines, Ms. Surico also challenges the Board's emphasis on finance experience for the SPA position. She maintains the job description did not emphasize the need for finance, marketing or management skills, in that the position required only a B.A. or B.S. in a related field, and not specifically business. Thus she contends her Master's Degree in early childhood education was more than sufficient. As proof of pretext, she points to the Board's creation of the job description after it already had Mr. Brownlee's resume, suggesting the Board tailored the position to his skills, and the fact that Mr. Brownlee now admits he rarely uses finance skills in performing his duties as the SPA.

A similar situation was recently presented in *Guerrero, supra.* In that case, plaintiff, a Hispanic FBI agent who was not promoted, sued claiming disparate treatment based on race and national origin.

*Id.* at 311. The FBI explained it did not promote plaintiff because although his administrative skills were superior to the other candidates, his operational skills were lacking. *Id.* at 313. The parties disagreed on the question of whether the position plaintiff sought emphasized administrative or operational skills. *Id* at 314. The Seventh Circuit resolved the matter as follows:

> Quoting the job description, Guerrero argues that administrative skills were paramount, while the FBI argues operational skills were more important. Reviewing the job description in the light most favorable to Guerrero, it is clear that the job demanded *both* administrative and operational skills. That the FBI eventually based its promotion decision on the candidates' operational skills, specifically those listed in the job description, is legitimate.

*Id.* Likewise, in reviewing the job description here, the SPA position clearly required "applicable knowledge and background in finance, management and marketing." Therefore no improper motive can be attributed to the Board's decision to focus on that particular element of the job description in its search for the best candidate to fill the position. This Court is not a super-personnel board, and as such, it may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem. *Id.*

Moreover, this Court is not persuaded to presume pretext on the Board's part solely because Mr. Brownlee may not frequently utilize his finance background in the SPA position. First, Ms. Surico's assertion that the Board deliberately crafted a job description centered on Mr. Brownlee's skills is completely unfounded. She points to no support in the record for that allegation, and therefore the Court will disregard the accusation. Furthermore, the mere fact that Mr. Brownlee uses other skills in fulfilling his job duties does not invalidate the legitimate business reason given for choosing him over Ms. Surico. At the time the job description was created and the Board made its hiring decision, it intended for the SPA to focus on the finance, marketing and management aspects of the job. Ms. Surico has not provided a scintilla of evidence demonstrating the Board's business rationale was a sham or was not based in fact. *Id.*

Next, Ms. Surico points to comments by others as evidence of pretext. She claims a Board member commented they should keep their fingers crossed that Mr. Brownlee does the job. In addition, she contends both Dr. Murphy, the District Superintendent, and the other rejected candidate, Ms. Hogsett, encouraged her to legally pursue the matter of not being hired. Regardless of those comments, Ms. Surico

admits she does not believe any Board members discriminated against her on the basis of her race or gender. Thus, those innocuous remarks cannot constitute direct evidence of discrimination. Nevertheless they may qualify as stray remarks that can be used to demonstrate pretext. *Indurante v. Local 705, Int'l Brotherhood of Teamsters*, 160 F.3d 364, 367 (7th Cir. 1998) (defining stray remarks as "biased comments made by the decision-maker but not related to the disputed employment action"). Obviously, Dr. Murphy and Ms. Hogsett are not decision-makers; therefore their comments are irrelevant. The Board member on the other hand was a decision-maker, but his comment was rather benign, and, significantly, raised neither race nor gender concerns. He did not say anything at all that would imply the Board selected Mr. Brownlee for the position only because he was an African-American male, or that it rejected Ms. Surico because she was a White female. That one comment, standing alone, is not enough to create an issue on pretext. *Id* at 368.

Finally, Ms. Surico turns to statistical evidence, focusing on the fact that the entire Board, like Mr. Brownlee, is African-American, and that 83% of the District's administrative employees are African-American. She does not offer any comparable evidence concerning the gender breakdown of the Board or District. While statistical evidence is admissible and helpful, *Bell v. EPA*, 232 F.3d 546, 554 (7th Cir. 2000), standing alone, it does not prove pretext, *Guerrero*, 253 F.3d at 315. Indeed, the Court looks to see if the statistical evidence shows a causal relationship suggesting a protected classification makes a difference in employment decisions. *Bell*, 232 F.3d at 553. The figures presented by Ms. Surico do not provide a clear picture to suggest the District discriminates against white women in its employment decisions. In fact, the District counters the statistical evidence by pointing to three situations in which the Board ignored Dr. Murphy's recommendation in filling a position. In each case, the rejected employee was African-American. Therefore, this is not one of the rare cases where statistics alone creates a triable issue of pretext.

## IV. Conclusion

The Court recognizes it is often difficult for individuals who feel they were the best qualified candidate for a position to accept that an employer nonetheless chose someone else. Certainly it was not unreasonable for Ms. Surico to believe that, given the high rating she received from the interview

committee and the recommendation of Dr. Murphy, the Board would select her to fill the SPA position. When it did not, Ms. Surico was understandably disappointed and sought to uncover the true reason behind the rejection. She may never be satisfied that the Board gave her full and fair consideration in this process. Nevertheless, it is clear to this Court Ms. Surico has not come forward with any evidence demonstrating the Board's decision was motivated by race or gender discrimination. Absent such proof, she has failed to demonstrate a genuine issue of material fact as to pretext. Therefore, summary judgment is granted in favor of the District.

**IT IS SO ORDERED.**

WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: March 15, 2002